UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| ROBERT WEED PLYWOOD CORPORATION, ) ) ) *Plaintiff,* ) ) v. ) ) CANUSA WOOD PRODUCTS, LTD., ) ) *Defendant* ) | CAUSE NO. 3:23-CV-30 RLM-MGG |

OPINION AND ORDER

Robert Weed Plywood Corporation sued Canusa Wood Products, Ltd., for breach of contract and declaratory judgment, alleging that Canusa Wood failed to deliver large quantities of plywood to Robert Weed. Canusa Wood moves to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(3) for improper venue, [Doc. 9], citing a purported forum-selection clause that requires the parties to litigate in British Columbia. Robert Weed moves for leave to file a surreply in opposition to the motion to dismiss or to strike new evidence and legal argument. [Doc. 15]. The court construes Canusa Wood's Rule 12(b)(3) motion to as a *forum non conveniens* motion to dismiss and denies the motion and denies Robert Weed's motion for leave to file surreply.

BACKGROUND

A court ordinarily assumes a plaintiff's allegations as true on a motion to dismiss. Deb v. Sirva, Inc., 832 F.3d 800, 804 (7th Cir. 2016). A court can look

beyond the pleadings on a motion to dismiss relating to venue, id. at 809, and both parties included evidence in their briefing. These facts come from Robert Weed's complaint, unless specifically noted as coming from either party's evidentiary submissions.

Robert Weed Plywood Corporation is an Indiana company that distributes raw plywood and produces wood products, aiming most of its business at the recreational vehicle market.

Demand for recreational vehicles soared in 2020 and 2021, raising demand for Robert Weed's products and services. Robert Weed faced particularly high demand for Meranti plywood, a type of hardwood that's useful for recreational vehicle interiors. Meranti wood is grown and milled mostly in Indonesia and Malaysia, so must be imported into the United States. To meet heightened demand, Robert Weed enlisted the services of Canusa Wood Products, Ltd. Canusa Wood is a British Columbia-based business that imports wood into the United States. Canusa Wood attracted Robert Weed with its claims of special relationships with foreign Meranti wood mills and its logistical capacity. Canusa Wood claimed it could import up to 225 truckloads of Meranti wood per month, within four to six months of an order being placed.

Canusa Wood agreed to import Meranti wood for Robert Weed. Confident that Canusa Wood could import vast amounts of Meranti wood for relatively cheaply, Robert Weed solicited more and more business and set its pricing based on its advantageous agreement with Canusa Wood.

Then things went south. Canusa Wood's deliveries to Robert Weed became delayed and Canusa Wood kept Robert Weed in the dark as to the reasons for delay. By mid-2022, forty-two million dollars' worth of Meranti wood deliveries was delayed by more than six months and over ten million dollars' worth of deliveries was delayed more than a year. The market didn't move as Robert Weed had expected — demand for recreational vehicles slowed, Meranti wood flooded the market, and Robert Weed was left holding the bag. Robert Weed lost over seventy-five million dollars in revenue because of Canusa Wood's delivery delays. Despite the delays and the change in market forces, Canusa Wood demanded that Robert Weed accept late delivery and pay for all its orders.

The parties remember their ordering process differently. Canusa Wood explains the process through a declaration from James Bennet, Canusa Wood's Vice President of Finance and Operations. He attests that when a customer submits a purchase order to Canusa Wood, Canusa Wood responds with an order acknowledgment confirming the order and saying, "order is subject to Canusa Wood's Standard Terms & Conditions of Sale which can be found on our website at www.canusawood.com/terms." Then, when Canusa Wood delivers an order, it sends the customer an invoice that includes substantially similar language: "Unless otherwise specified on the order acknowledgment, this order is subject to Canusa Wood's Standard Terms & Conditions of Sale which can be found on our website at www.canusawood.com/terms." The website's terms and conditions state, "All disputes relating [to this agreement] shall be within the exclusive jurisdiction of the Courts of [British Columbia]." Canusa Wood

includes an example of an order acknowledgment sent to Robert Weed and the order acknowledgment refers to the website's terms and conditions.

Robert Weed offers a different account. It first says that Mr. Bennett wasn't involved in any of their business dealings, so he couldn't know what the ordering process was like. Then, Michael Werntz, Materials Processing Manager for Robert Weed, explains in a declaration that Robert Weed used a "programmatic" ordering process for most orders. He would send several purchase orders together to a Canusa Wood email address and then send an order summary by email to Ross McLaren, Canusa Wood's president, and Devon Hess, sales representative for U.S. sales. Neither Robert Weed's purchase orders nor its emails referred to Canusa Wood's terms and conditions or a forum-selection clause. Mr. McLaren or Ms. Hess would reply confirming the order but never mentioning the terms and conditions or forum-selection clause. Mr. Werntz adds that Robert Weed received few of its orders and for the small portion it received, Canusa Wood sent an invoice only upon delivery. Mr. Werntz never discussed a forum-selection clause with Canusa Wood but agrees that for some small number of smaller volume orders, the purchase order referred to the terms and conditions as Mr. Bennett described. Copies of an exemplar purchase order, email to Canusa Wood, and response from Canusa Wood accompany Mr. Werntz's declaration.

Canusa Wood supplements its account in reply with another declaration from Mr. Bennett. He attests that he was personally involved in Robert Weed's orders and that Canusa Wood sent 2,206 or more invoices and order

4

acknowledgements referring to the terms and conditions to Robert Weed. More specifically, the terms and conditions became effective May 11, 2020, and Robert Weed then placed 2,463 orders. Canusa Wood sent invoices referencing the terms and conditions for 1,734 orders and sent order acknowledgments referencing the terms and conditions for 472 orders. Robert Weed's "programmatic" or bulk ordering began in 2021. Canusa Wood didn't send an order acknowledge or invoice for every order but sent 364 order acknowledgments and 1,548 invoices.

Robert Weed brings this action against Canusa Wood for breach of contract based on Canusa Wood's alleged failure to timely deliver the Meranti wood and seeks a declaratory judgment that Robert Weed isn't obligated to purchase any of the wood. Canusa Wood's motion to dismiss is before the court. Canusa Wood claims that the parties have a binding forum-selection clause, setting the courts of British Columbia as the sole forum for disputes.

STANDARD OF REVIEW

Canusa Wood moves to dismiss for improper venue under Federal Rule of Civil Procedure 12(b)(3) based on a forum-selection clause pointing to a nonfederal forum. Such a forum-selection clause doesn't render venue improper, so a Rule 12(b)(3) motion isn't quite the right vehicle for enforcement; a forum-selection clause pointing to a nonfederal forum is enforced with the doctrine of *forum non conveniens*. Atl. Marine Constr. Co. v. U.S. Dist. Ct. for the W. Dist. of Tex., 571 U.S. 49, 60 (2013). Accordingly, the court construes Canusa Wood's

Rule 12(b)(3) motion as a *forum non conveniens* motion. *See* <u>Mueller v. Apple Leisure Corp.</u>, 880 F.3d 890, 894 (7th Cir. 2018).

The court assumes the truth of the plaintiff's allegations. <u>Deb v. Sirva, Inc.</u>, 832 F.3d 800, 804 (7th Cir. 2016) (applying Rule 12(b)(3) assumptions to *forum non conveniens*). But "[w]here one party makes a bald claim of venue and the other party contradicts it, a district court may look beyond the pleadings." <u>Id.</u> at 809. If both parties submit evidence, the court resolves the evidence in the plaintiff's favor at the motion-to-dismiss stage. *Cf.* <u>Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.</u>, 338 F.3d 773, 782 (7th Cir. 2003). If the *forum non conveniens* motion hinges on a question of fact, a court can hold an evidentiary hearing to resolve fact questions or can deny the motion with leave to refile. *See* <u>Deb v. Sirva</u>, 832 F.3d at 809.

## DISCUSSION

Canusa Wood seeks to use the doctrine of *forum non conveniens* to enforce a forum-selection clause requiring that all litigation take place in the courts of British Columbia. It argues that its order acknowledgments and invoices incorporated the forum-selection clause into its contracts with Robert Weed.

The doctrine of *forum non conveniens* requires a court to evaluate the convenience of the parties and public-interest considerations. <u>Atl. Marine v. U.S. Dist. Ct.</u>, 571 U.S. at 62. A court ordinarily balances various factors to determine whether dismissal for refiling in another forum would serve the convenience of the parties and witnesses and otherwise promote the interest of justice. <u>Id.</u> at

6

62–63, 62 n.6. But a valid forum-selection clause reflects the parties' negotiations and desires, so it makes the parties' private interests "drop out of the equation." Mueller v. Apple Leisure Corp., 880 F.3d at 894. Instead, the party acting in violation of a forum-selection clause "bear[s] the burden of showing that public-interest factors overwhelmingly favor a transfer," or here, dismissal.[1] Atl. Marine v. U.S. Dist. Ct., 571 U.S. at 66. Public-interest factors rarely override a valid forum-selection clause, so "the practical result is that forum-selection clauses control except in unusual cases." Id. at 64.

Courts construe forum-selection clauses broadly, Nulogy Corp. v. Menasha Packaging Co., LLC, 590 F. Supp. 3d 1141, 1145 (N.D. Ill. 2022), and international forum-selection clauses are prima facie valid. 1st Source Bank v. Neto, 861 F.3d 607, 612 (7th Cir. 2017).

Canusa Wood's forum-selection clause refers to any dispute relating to a contract and Robert Weed brings a breach-of-contract claim and declaratory action about the contract, so there's little question that the forum-selection clause, if enforceable, would cover Robert Weed's claims. Canusa Wood then contends that the clause must be enforced because a forum-selection clause selecting British Columbia is run of the mill. British Columbia is a flight away

---

[1] The Court in Atlantic Marine v. U.S. District Court addressed transfers to other federal fora under 28 U.S.C. § 1404(a). 571 U.S. at 52. Its analysis applies with equal force to a *forum non conveniens* motion that invokes a forum-selection clause pointing to a nonfederal forum. Id. at 61. ("And because both § 1404(a) and the *forum non conveniens* doctrine from which it derives entail the same balancing-of-interests standard, courts should evaluate a forum-selection clause pointing to a nonfederal forum in the same way that they evaluate a forum-selection clause pointing to a federal forum.").

7

from the Northern District of Indiana, Canada doesn't have travel restrictions that would inhibit litigation, no other factors show the clause is unreasonable, and other courts have enforced Canadian forum selection clauses. *See, e.g.*, Vijuk Equip. v. GUK-Falzmaschinen Griesser & Kunzmann GmbH & Co. KG, 902 F. Supp. 162 (N.D. Ill. 1995).

Robert Weed doesn't contest that it had a contract with Canusa Wood, nor does it seem to contest that the forum-selection clause would apply if it were part of the contract. Robert Weed instead asserts that the forum-selection clause simply isn't part of the contract. No matter the breadth of a forum-selection clause, "[o]nly if a court concludes [the parties] entered a contract with a forum selection-clause will the court turn to the broader issue of the enforceability of that clause. Ridgelawn Cemetery Ass'n v. Granite Res. Corp., No. 2:16-CV-370, 2017 U.S. Dist. LEXIS 140740, at *6 (N.D. Ind. Aug. 31, 2017).

According to Robert Weed, the Convention on Contracts for the International Sale of Goods governs any contract between it and Canusa Wood. *See* United Nations Convention on Contracts for the International Sale of Goods, *adopted* Apr. 11, 1980, S. Treaty Doc. No. 98-9 (1983), 1489 U.N.T.S. 3. Robert Weed contends that contract law of the Convention shows that it never consented to the forum-selection clause. Each purchase order to Canusa Wood was an offer and Canusa Wood accepted each offer when it confirmed orders via email, as Mr. Werntz described. The order acknowledgment forms and invoices came later, after the contract was already formed, so additional terms like the forum-selection clause were proposed counteroffers. The Convention doesn't permit

consent to contract terms by silence or inaction, so Robert Weed's failure to object to the terms didn't amount to its consent. The forum-selection clause was never more than a proposed additional term that Robert Weed never accepted.

The court sits in diversity, so ordinarily would apply state substantive law to these contract claims. *See* Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938). That changes when a federal treaty comes into play; state law supplies substantive law "except where . . . treaties of the United States . . . otherwise require or provide." 28 U.S.C. § 1652. The Convention is a self-executing treaty, so it is federal law. VLM Food Trading Int'l, Inc. v. Ill. Trading Co., 748 F.3d 780, 787 (7th Cir. 2014). The Convention's own terms make clear that it supplies the rule of decision: the Convention applies to contracts for the sale of goods between parties with places of business in separate treaty countries. Id. (citing Convention art. 1(1)). Robert Weed and Canusa Wood contracted for the sale of Meranti wood, a good, and have places of business in the United States and Canada respectively, which are both treaty countries. The Convention requires application and takes the place of state law. *See* 28 U.S.C. § 1652. Put differently, the Convention is federal law that supersedes any state law under the U.S. Constitution's Supremacy Clause. VLM Food Trading Int'l v. Ill. Trading, 748 F.3d at 787 (citing U.S. Const. art. VI, cl. 2; Medellin v. Texas, 552 U.S. 491, 504–506 (2008)).

Canusa Wood objects to applying the Convention. It argues that the Convention is irrelevant and that the court should look at the parties' course of dealing to decide what was in the contract, like other courts in this circuit have

9

done. *See* Waukesha Foundry v. Indus. Eng'g, 91 F.3d 1002, 1010 (7th Cir. 1996); TATA Int'l Metals, (Ams.) Ltd. v. Kurt Orban Partners, LLC, 482 F. Supp. 3d 737, 751 (N.D. Ill. 2020). Canusa Wood asserts that by continuing to place orders after receiving the terms and conditions, Robert Weed consented to the terms and conditions.

Canusa Wood's theory is valid in some cases but falls short here. The cases it cites involved substantive law other than the Convention and Canusa Wood doesn't provide any authority for not applying the Convention. In Waukesha Foundry v. Industrial Engineering, the court applied Uniform Commercial Code § 2-207 as codified in Wisconsin law to conclude that parties' course of dealings can show implicit consent to new contract terms. 91 F.3d at 1003, 1010. The case arrived at the district court under its diversity jurisdiction, requiring application of Wisconsin law. Id. at 1003. Nothing suggests that the court declined to apply the Convention despite the Convention's applicability. In TATA International Metals v. Kurt Orban Partners, the court considered a forum-selection clause in determining whether there was specific personal jurisdiction over the defendant. 482 F. Supp. 3d at 749–751. The court applied Illinois's version of § 2-207 to conclude that the parties' contract included a forum-selection clause. Id. Nothing suggested the court applied Illinois law despite the Convention. A third case explained that "[w]ith respect to contracts, courts consider prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." Sullivan v. Bickler, 360 F. Supp. 3d 778, 784 (N.D. Ill. 2019) (quotations and citations

10

omitted). That excerpt discussed whether the defendant directed its activity at the forum state for purposes of personal jurisdiction. Id. Whether the parties' course of dealing shows personal jurisdiction doesn't shed light on contract formation.

Canusa Wood's caselaw shows that a court can look at the parties' course of dealing to determine what is in a contract, but only if the contract is governed by state law that incorporates U.C.C. § 2-207. Canusa Wood doesn't explain which state's version of the U.C.C. should apply, why some state's version should apply, or why the Convention is inapplicable despite its own terms and the Supremacy Clause.[2] The Convention is federal law and its terms show that it governs this contract, so the Convention provides substantive contract law.

Robert Weed's argument casts doubt on the existence of a valid forum-selection clause, so Canusa Wood must show the existence of the forum-selection clause. See Ridgelawn Cemetery Ass'n v. Granite Res. Corp., No. 2:16-CV-370, 2017 U.S. Dist. LEXIS 140740, at *4 (N.D. Ind. Aug. 31, 2017). A contract is formed under the Convention when there's a valid offer and acceptance. VLM Food Trading Int'l, Inc. v. Ill. Trading Co., 811 F.3d 247, 251 (7th Cir. 2016). An offer is valid if it is "sufficiently definite and indicates the

---

[2] When a party has multiple places of business, the Convention considers the party's place of business to be "that which has the closest relationship to the contract and its performance." Convention art. 10(a). Robert Weed claims Canusa Wood has an office in Elkhart, Indiana, so both parties could be United States parties under the Convention. Even so, Canusa Wood's evidence supports that the contract relationship was mostly handled in Vancouver, and Canusa Wood didn't argue or show that its Elkhart office most closely handled the contract.

intention of the offeror to be bound in case of acceptance." Id. (quoting Convention art. 14(1)). A party can accept an offer by words or actions but not by silence or inactivity. Id. (citing Convention art. 18(1)).

The Convention parts ways with the U.C.C. with its battle-of-the-forms provision. When an offer and an acceptance don't match, the Convention uses the common-law "mirror image" rule to resolve to decide what's in the contract. Id. (citing Convention art. 19). If a reply to an offer includes new terms, that reply is a rejection of the offer and is a counteroffer, even if it purports to be an acceptance. Id. (citing Convention art. 19(1)). By contrast, the U.C.C. considers such a reply with additional terms to be an acceptance and the new terms become part of the contract in most instances. U.C.C. § 2-207(1), (2). One such instance is if a party consents to new terms through its conduct. Id. § 2-207(3).

Robert Weed contends that it never consented to the forum-selection clause. It argues that the forum-selection clause was a proposed modification because Canusa Wood proposed the forum-selection clause only after each contract was formed. Under the Convention, Robert Weed's failure to object to a proposed modification before placing new orders doesn't amount to consent to new terms, so the forum-selection clause never became part of the contract.

This account finds support in Robert Weed's evidence. Michael Werntz attested that he would send purchase order forms specifying the quantity, unit price, total price, and delivery date. Such orders specified the goods, quantity, and price, so were sufficiently definite to constitute an offer. Convention art. 14(1). Mr. Werntz would then send a summary of the order by email to Canusa

12

Wood and Canusa Wood would confirm the order with no mention of the forum-selection clause. These responses constitute acceptance of Robert Weed's offer. *See* Convention art. 18(1). Canusa Wood bound itself to the agreement by responding by email, so any attempt to add the forum-selection clause afterward wouldn't have been a counteroffer. It would instead be a proposed modification and Robert Weed neither had to object to keep the proposed modification out of the contract nor could Robert Weed consent by its silence.

Robert Weed compares this process to the facts in VLM Food Trading International, Inc. v. Illinois Trading Co., 811 F.3d 247 (7th Cir. 2016). In VLM Food Trading v. Illinois Trading, the defendant sent purchase orders to the plaintiff and the plaintiff responded with a confirmation email, forming a contract under the Convention. Id. at 252. The plaintiff sent invoices that included an attorney's fees provisions after sending the confirmation email. Id. The defendant never consented by word or action to the attorney's fees provisions, and the Convention didn't require a party to object to modification proposals to keep them out of a contract, so the court concluded that the contract excluded the attorney's fees provisions. Id.

As discussed before, Canusa Wood remembers things differently. Mr. Bennett attests that Canusa Wood sent thousands of order acknowledgments and invoices referring to the terms and conditions even after Robert Weed began bulk ordering. Mr. Bennett's declaration doesn't speak clearly to the timing — left unsaid is whether those acknowledgments and invoices went to Robert Weed before or after any confirmation emails.

Construing the facts and resolving affidavit conflicts in Robert Weed's favor as is required at this stage shows that Robert Weed never did anything to consent to new terms under the Convention. When Robert Weed received an order acknowledgment or invoice for an order, it never showed consent to the proposed modification of including the forum-selection clause. When Robert Weed placed new orders, those new orders didn't show consent to the earlier proposed modifications; the Convention's mirror-image rule doesn't require a party to object to new terms to keep them out of a contract. VLM Food Trading Int'l v. Ill. Trading, 811 F.3d at 254.

But even assuming Canusa Wood's version of events is correct, Canusa Wood only shows that it sent the proposed modifications, not that Robert Weed accepted them. That Canusa Wood continued to send the order acknowledgments and invoices doesn't change that Robert Weed never affirmatively consented because "a party's multiple attempts to alter an agreement unilaterally do not so effect." Id. (quoting Château des Charmes Wines Ltd. v. Sabaté USA Inc., 328 F.3d 528, 531 (9th Cir. 2003)). Although Mr. Werntz admits that Robert Weed received an order acknowledgment form for smaller volume purchases making about 10% of orders, he doesn't admit to any action on Robert Weed's behalf that would indicate consent to new terms. Silence and inactivity can't indicate consent, so the terms wouldn't become part of the contract. See VLM Food Trading Int'l v. Ill. Trading, 811 F.3d at 252.

Robert Weed has shown that the Convention governs contract law between the parties and that it never consented to the forum-selection clause under the

14

Convention. With the existence of the forum-selection in doubt, Canusa Wood bore the burden of proving the existence of the clause but hasn't done so. *See* Ridgelawn Cemetery Ass'n v. Granite Res. Corp., No. 2:16-CV-370, 2017 U.S. Dist. LEXIS 140740, at *5 (N.D. Ind. Aug. 31, 2017). Canusa Wood put all its eggs in one basket — insisting that the court can and should apply contract law from the U.C.C. — but didn't explain why the Convention doesn't govern or how Robert Weed consented under the Convention. The result is the same whether Robert Weed's evidence or Canusa Wood's evidence is held against the Convention, so the court declines to hold an evidentiary hearing.

Robert Weed raises other arguments about whether terms included on a separate website can be incorporated, but those arguments are unnecessary to resolve so the court doesn't reach them.

Robert Weed moves for leave to file a surreply or alternatively to strike new evidence and legal argument. [Doc. 15]. It argues that Canusa Wood improperly brought new evidence and argument as to Mr. Bennett's involvement with and knowledge of Canusa Wood and Robert Weed's dealing in Canusa Wood's reply brief. Any other argument and evidence built on earlier introduced evidence or replied to Robert Weed's response, so the court denies the motion for leave to file a surreply or to strike new evidence and legal argument.

CONCLUSION

For these reasons, the court DENIES Canusa Wood's motion to dismiss for *forum non conveniens* without prejudice, [Doc. 9], and denies Robert Weed's motion for leave to file surreply. [Doc. 15].

SO ORDERED.

ENTERED:   April 24, 2023

/s/ Robert L. Miller, Jr.
Judge, United States District Court